IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA MAESTAS, as
Personal Representative of the
ESTATE OF ALFRED REDWINE,
*et al.*,

                Plaintiffs,

vs.                                                             Civ. No. 15-0053 MCA/KK

THE CITY OF ALBUQUERQUE, *et al*,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

        This case is before the Court upon Officer James Eichel's *Motion for Summary*

*Judgment*. [Doc. 12] The Court has considered the written submissions of the parties, the

evidence adduced in support of and in opposition to the motion, the record in this case and

the applicable law, and is otherwise fully advised.  For the reasons set out below, the

Court grants Officer Eichel's motion as to Plaintiffs' federal claims and denies the motion

as to Plaintiffs' state-law claims.

**Summary Judgment Standards**

        Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment,

identifying each claim or defense—or the part of each claim or defense—on which summary

judgment is sought.  The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

A*damson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

The factual record and reasonable inferences therefrom are viewed in the light most

favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150

F.3d 1271, 1274 (10th Cir. 1998).  "It is not [the court's] province at the summary

judgment stage to weigh the evidence or to make credibility determinations."  *Sanders v.*

*Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Qualified Immunity**

> Resolution of a dispositive motion based on qualified immunity involves a two pronged inquiry.  First, a court must decide whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented. A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations and

internal quotation marks omitted).

2

**Background**

Based on a review of the record,[1] the Court concludes that a reasonable jury could

find the following material facts:

On March 25, 2014 at approximately 9:07 p.m., a teenage 911 caller reports that a

neighbor has threatened the caller and the caller's cousin with a gun at 228 60th St. NW.

The caller's mother, Thelma Jim, comes on the line.  Ms. Jim describes the subject with

the gun and tells the 911 operator that the subject ran away.   APD Officers James Eichel

and another officer are dispatched to the scene and provided with the following

information:

> CLR ADVSD MALE 41 JUST PULLED A GUN OUT AN CLR
> POINTING AT CLR . . . SUBJ WAS ACCUSING CLR OF 27-6ING FRM
> HIM . . . ORIGINAL CLR IS 14 YOA FEM . . . MALE POINTED GUN
> AT 14YOA

Other officers, including Defendant Lt. Arturo Sanchez respond. Upon arriving at the

scene, Officer Eichel and Lt. Sanchez  interview Ms. Jim and her partner, Tyrone

Bilagody.  Ms. Jim reports that her 14 year-old daughter was with a 13 year-old girl when

the subject confronted the girls, pointing a gun at Ms. Jim's daughter.   Ms. Jim recalls

that when she confronted the subject, the subject showed a gun, saying "Hey back off or I

---

[1]Plaintiff concedes as undisputed the facts set out in ¶¶ 2, 3, 6, 10-17, 21-27, 29, 34-35, 43, and 45-48 of Officer
Eichel's Statement of Facts. [Doc. 12]  The Court accepts these facts as established for purposes of its analysis. Many
of the facts identified by Officer Eichel as undisputed are not material to the reasonableness of Officer Eichel's use of
deadly force. For example, many of the facts cited by Officer Eichel bear on the reasonableness of  Lt. Sanchez's
conduct and are not material to the reasonableness of Officer Eichel's conduct.  The Court has not attempted to
resolve disputes as to facts immaterial to Officer Eichel's liability.

got something for you," and then ran into a nearby apartment. Mr. Bilagody recalls the

subject saying "I've got something for your [sic] guys better." Ms. Jim tells Officer

Eichel and Lt. Sanchez that four children and a grandmother are inside the apartment into

which the subject has fled. She points out the apartment.

Officer Eichel and fellow Officer Fred Duran are stationed behind a cinder block

wall with a view of the front of the subject's apartment. Officer Eichel is armed with a

.223 cal. assault rifle; Officer Duran is armed with a beanbag shotgun. The responding

officers believe that the subject is Alfred Redwine, who is known to APD from prior

disturbances at the same location. Alfred has been "very angry" and "upset" during

Officer Eichel's three prior encounters with Alfred, who does not like police.

When the subject comes outside the apartment, Officer Eichel recognizes him as

Alfred. Officer Eichel can see that Alfred is carrying a small revolver[2] in his right hand

and a cellphone in his left hand. Alfred is accompanied by two boys. The boys run

through an opening in the wall past Officer Eichel and outside the perimeter set up by

APD. Alfred is visibly and audibly distraught. Alfred holds the revolver with the barrel

pressed against his right temple. Alfred stops walking forward when he is approximately

15 to 20 feet from the cinder block wall behind which Officers Eichel and Duran are

stationed. Officer Eichel aims his assault rifle at Alfred to cover Officer Duran. Officer

---

[2]The Court recognizes that, generally, conflicting evidence is construed in favor of the nonmovant. However, having repeatedly viewed the cellphone video of the shooting using both normal speed and slow motion, the Court finds that no reasonable jury could credit the testimony of Plaintiff's eyewitnesses over the evidence provided by cellphone video. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The visible puffs of gun smoke make it clear that the object that Alfred had been holding against his right temple was a firearm, not a cellphone. Although the Court has relied on the cellphone video in determining that Alfred had a firearm in his hand, the Court continues to view the remaining evidence in the light most favorable to Plaintiff. *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010).

Duran, who is positioned  immediately to Officer Eichel's right, trains his beanbag

shotgun  on Alfred.  Various officers, including Officer Eichel, repeatedly implore Alfred

to drop the gun.  Lt. Sanchez,  joins Officers Eichel and Duran behind the wall.  Just as

Lt. Sanchez begins to speak to Alfred, Alfred brings the revolver away from his temple,

pointing the revolver at the ground in the general direction of the wall.  Alfred fires two

rounds into the ground in front of him.  Instantaneously, Officer Eichel fires three rounds

from his assault rifle.   Alfred is hit by all three rounds.  He collapses to the ground,

mortally wounded.

**Discussion—Federal Claims**

Officer Eichel moves for summary judgment as to Count I (Unreasonable Seizure)

and Count III (Excessive and Unnecessary Use of Force).   If Officer Eichel can be found

to have seized Alfred, it is by having incapacitated him by shooting him three times. *See*

*Brooks v. Gaenzle*, 614 F.3d 1213, 1216-25 (10th Cir. 2010) (considering and deciding

that shooting constitutes a seizure only when it results in physical control of suspect).

The Court concludes that these counts are duplicative as applied to Officer Eichel.

Accordingly, the Court will address both counts using a single Fourth Amendment

analysis.

The Court concludes that a reasonable jury could find that Officer Eichel seized

Alfred when he shot him three times, causing Alfred to fall to the ground where he lay

completely incapacitated by his wounds.  *Havens v. Johnson*, 783 F.3d 776, 781 (10th

Cir. 2015) ("We treat excessive force claims as seizures subject to the reasonableness

requirement of the Fourth Amendment.") (quoting *Estate of Larsen ex rel. Sturdivan* v.

Murr, 511 F.3d 1255, 1259 (10th Cir. 2008).

The Court next considers whether the force employed by Officer Eichel in

accomplishing the seizure was (un)reasonable. "[D]eadly force is justified under the

Fourth Amendment if a reasonable officer in the defendant's position would have had

probable cause to believe that there was a threat of serious physical harm to themselves or

to others." *Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005). This is a totality-of-

the-circumstances inquiry. *Id.* at 1080.

Among the circumstances that our Court of Appeals has identified as relevant in

deciding whether resort to deadly force was reasonable are: (1) whether the officers

ordered the suspect to drop his weapon as well as the suspect's compliance or non-

compliance, (2) whether the suspect made hostile motions toward the officers, (3) the

distance separating the officers and the suspect, and (4) the apparent intentions of the

suspect. *Estate of Larsen*, 511 F.3d at 1260. The first factor weighs in favor of a

reasonable apprehension of serious harm: the evidence allows no dispute as to the fact

that in Officer Eichel's presence Alfred was repeatedly ordered to drop the revolver and

that he ignored those orders. The second factor also weighs in favor of an apprehension of

serious harm: the cellphone video conclusively establishes that Alfred pointed and fired a

revolver in the general direction of Officer Eichel and his fellow officers. The third factor

likewise weighs in favor of a finding of a reasonable apprehension of serious harm: the

evidence conclusively establishes that Alfred was within handgun range of the officers

when Officer Eichel shot him. The fourth factor is more equivocal: until the moment

that he lowered his hand and fired two shots into the ground, Alfred had kept the revolver

pointed at himself, not the officers, and had not verbally threatened the officers.  A jury

also could find that Alfred deliberately fired the two shots into the ground, rather than

aiming at the officers.

In addition to the *Larsen* factors, Officer Eichel was aware that he was responding

to a report that a subject had threatened others with a handgun.[3] This information would

have contributed to Officer Eichel's reasonable apprehension that Alfred presented  a risk

of serious harm to others.

However, a reasonable jury could have some concern with the fact that Officer

Eichel and Officer Duran, whom Officer Eichel was covering, were stationed behind a

cinder block wall, rather than in the open.  A reasonable jury might question whether a

reasonable officer in Officer Eichel's position would have believed that Alfred presented

an appreciable risk of harm to officers stationed behind a cinder block wall.[4]  A reasonable

jury could interpret the cellphone video as  showing  Alfred deliberately firing  the

revolver harmlessly into the ground in front of him.  A reasonable jury might expect a

trained law enforcement officer to be capable of holding his fire, rather than reflexively

returning fire.  And a reasonable jury could be troubled by Officer Eichel's resort to

---

[3]If the victims of Alfred's threats  believed that they were in danger of an "immediate battery," Alfred may have been guilty of aggravated assault, a fourth degree felony.  NMSA 1978, §§ 30-3-1(B), 30-3-2(A).

[4]The Court is not suggesting that a cinder block wall is impervious to all handgun rounds.  Here, however, several witnesses, including police officers, recalled seeing Alfred holding a "small" revolver.

deadly force when Officer Duran was standing next to him with a beanbag shotgun trained on Alfred.[5]

   If this case were not a Fourth Amendment excessive force case, the Court would be inclined to hold that the evidence establishes a genuine issue of material fact requiring a jury, exercising its collective knowledge and experience, to decide whether Officer Eichel acted reasonably in firing his assault rifle at Alfred.  *Cf. Prosser and Keeton on the Law of Torts* § 19 at 127 (5th ed. 1984) ("Ordinarily the question of what is reasonable force is to be determined by the jury.").  In other words, this is a case where reasonable members of the community served by the APD[6] might disagree over the reasonableness of  Officer Eichel's decision to fire three rounds from his assault rifle at Alfred.  But this is a Fourth Amendment excessive force case.  If the controlling material facts are undisputed, the Tenth Circuit Court of Appeals treats the objective reasonableness of an officer's use of force as a question of law to be decided by judges, not as a question of  historical fact to be decided by a jury:  "Once the relevant facts are determined with all reasonable inferences drawn in favor of the non-moving party at the summary judgment stage, 'whether [the suspect's] actions have risen to a level warranting deadly force . . . is a pure question of law.'" *Cordova v. Aragon,* 569 F.3d 1183, 1187 (10th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007));  *Cavanaugh v. Woods Cross City,*  718 F.3d 1244, 1254 (10th Cir. 2013) (observing that court makes excessive force

---

[5]Officer Duran can be seen flinching and ducking to his right behind the masonry wall as Officer Eichel fires three rounds, preempting Officer Duran's deployment of his beanbag shotgun.  [Ex. E2, Clip508 at 26:56].
[6]The relationship between the community and APD has  been roiled by concerns with APD's use of deadly force against civilians.  For background, see U.S. Dept. of  Justice, *Investigation into Albuquerque Police Department*, http://www.justice.gov/usao-nm/apd (last visited on September 17, 2015).

determination "on its own" when there are no disputed material questions of historical

fact).

The Court concludes that the Court of Appeals would deem one undisputed fact as

standing out above all others in the totality of the circumstances:  the undisputed fact as

established by the cellphone video that Alfred fired two shots from his revolver in the

general direction of the wall behind which Officer Eichel and other officers were

stationed.  The Court is confident that the Court of Appeals would deem the other

evidence noted by the Court—evidence that Officer Eichel and Officer Duran were under

cover behind a masonry wall, that Alfred appears to have deliberately fired the two shots

at the ground rather than directly at the officers, and that Officer Duran was standing next

to Officer Eichel with a beanbag shotgun trained on Alfred —insufficient to overcome the

undisputed fact that Alfred fired two shots in the general direction of the wall behind

which Officer Eichel and his fellow officers  were stationed. [7]      In making a

reasonableness determination the Court of Appeals balances "the nature and quality of the

intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake." *Phillips*, 422 F.3d at 1080 (quoting *Graham v. Connor*,

490 U.S. 386, 396 (1989).  It is firmly established in the Tenth Circuit that "the

reasonableness standard does not require that officers use 'alternative "less intrusive"

means.'" *Medina v. Cram,*  252 F.3d 1124, 1133 (10th Cir. 2001) (quoting *Illinois v.*

*Lafayette,* 462 U.S. 640, 647-48 (1983)).  The Court of Appeals would not be inclined "to

---

[7]Here, the risk to the officers at the moment Officer Eichel fired at Alfred was not entirely insubstantial, although it most certainly was less than the near certainty of serious injury or death Alfred faced from being shot point blank in his center mass with an assault rifle.

second-guess [Officer Eichel's judgment] using the 20/20 hindsight found in the comfort of a judge's chambers." *Phillips*, 422 F.3d at 1084.

Constrained by Supreme Court and Tenth Circuit precedent, the Court concludes that Plaintiffs have not made out a case that Officer Eichel violated Alfred's Fourth Amendment rights by shooting him, thereby causing his death. *Cf. Phillips* (upholding SWAT team member's decision to shoot armed and belligerent subject); *Estate of Larsen, supra; Thomson v. Salt Lake City*, 584 F..3rd. 1304 (10th Cir. 2009).

"'Qualified immunity is applicable unless' the plaintiff can satisfy both prongs of the inquiry." *Herrera*, 589 F.3d at 1070 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The Court's conclusion that Plaintiffs have not satisfied the first prong of the qualified immunity test means that Officer Eichel is entitled to qualified immunity, and obviates consideration of the second prong.

**Discussion—State Law Claim**

In Count IV, Plaintiffs assert a state law claim against Officer Eichel pursuant to the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1, *et seq.*  Count IV can be characterized as claiming personal injury and wrongful death resulting from a battery committed by Officer Eichel upon Alfred.  NMSA 1978, § 41-4-12.  Officer Eichel argues that his "immunity has not been waived for an alleged assault and battery for his use of deadly force against [Alfred] because the record establishes that Officer Eichel's actions were lawful in that there was a reasonable amount of force used." [Doc. 12 at 26-27] The Court is not persuaded by Officer Eichel's argument.

First, the Court questions whether the Fourth Amendment standard of

reasonableness as developed by the United States Supreme Court and our Tenth Circuit

Court of Appeals corresponds to the common-law standard that New Mexico courts would

apply to Plaintiffs' state-law tort claim.   New Mexico is free to demand more of its law

enforcement officers than is required by Federal  law.  *See State v. Javier M.*, 131 N.M. 1,

12 (2001) (observing that the federal constitution provides a minimal level of protection,

leaving states free to provide individuals with greater protection), and thus, in developing

its tort law, New Mexico is not bound by the Tenth Circuit's  balancing of individual and

governmental interests in the Fourth Amendment context.   And as noted above, federal

law does not take into account available "less intrusive" means of restraining a suspect in

determining whether an officer acted reasonably in his use of deadly force.  In contrast,

under the common law, an actor is not privileged to use a particular level of force if he

knows or should know that lesser force would suffice.  Restatement (Second) Torts § 70,

cmt. c.; § 132, cmt. a (1965).  This point is significant given lapel camera footage showing

that Officer Duran was standing next to Officer Eichel with a beanbag shotgun trained on

Alfred.  Further, New Mexico law, unlike federal law, *Aldaba v. Pickens*, 777  F.3d 1148,

1155 (10th Cir. 2015) (observing that "the question is whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them, without

regard to their underlying intent or motivation.") (quoting *Graham v. Connor*, 490 U.S.

386,  397 (1989)), includes an inquiry into the good faith of an officer who employed

force,  *Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005) (citing *Mead v.

O'Connor*, 66 N.M. 170 (1959));  *see also* Restatement (Second) Torts § 70, cmt. b ("The

actor must believe that the means which he applies are necessary to prevent the

apprehended harm and not merely that they are likely to be effective in preventing it.  Not

only must the actor so believe, but, except when the means are actually necessary, his

belief must be reasonable. . . .").[8]

Second, in its analysis of Plaintiffs' federal claim, the Court concluded that a

reasonable jury could question whether Officer Eichel's use of deadly force was

reasonable, but that under Tenth Circuit precedent, the Court was required to take the

issue of reasonableness from the jury and decide it as a question of law.  The Tenth Circuit

precedent to which the Court looked was part of the qualified immunity analysis required

in § 1983 actions seeking damages from a defendant sued in his individual capacity.

Federal qualified immunity law, including its treatment of reasonableness as a question of

law in certain circumstances, does not apply to Plaintiffs' state-law tort claim.  *See Jenkins*

*v. City of New York*, 478 F.3d 76, 86 n.7 (2d Cir. 2007) (collecting authorities).  Where

reasonable minds could disagree, the reasonableness of force employed by a law

enforcement officer is a question of fact under New Mexico law.  *Mead*, 66 N.M. at 173;

---

[8]In defending against Plaintiff's tort claim, Officer Eichel bears the burden of establishing self-defense or other justification as an affirmative defense. *Miller v. Taylor*,  877 F.2d 469, 472 (6th Cir. 1989) (contrasting allocations of burdens of proof in § 1983 excessive force claim and common-law  tort claim); *see also Prosser and Keeton on the Law of Torts* § 16 (5th ed. 1984). Because the reasonableness of  Officer Eichel's use of force arises by way of an affirmative defense,  the ordinary summary judgment standards are modified:

> If the movant bears the burden of persuasion at trial on the issue contested in the summary judgment motion, the movant may not meet its initial burden by pointing to the nonmovant's lack of  evidence on a contested issue.  When the movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment after trial should the nonmovant fail to rebut the evidence.  In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it.  Anything less should result in denial of summary judgment.

11 *Moore's Federal Practice* § 56.40[1][c] (3d ed. 2013).  By focusing solely on the objective component and overlooking the good faith component, Officer Eichel failed to make out a prima facie case of entitlement to summary judgment.

*Perez v. City of Albuquerque*, __N.M.__, __, 276 P.3d 973, 976 (Ct. App. 2012).  New

Mexico law recognizes that a jury, applying its collective knowledge and experience and

aided by appropriate instructions regarding the exigencies faced by officers in the field, is

fully capable of deciding  whether an officer's use of force was reasonable.  *Mead*, *supra*.

And to the extent that both New Mexico and federal law include an inquiry into the

objective reasonableness of an officer's use of force, *Tanberg*, 401 F.3d at 1168, the actual

application of the state and federal standards likely will vary given New Mexico's

allocation question of reasonableness to juries, rather than to judges.  The Court concludes

that, procedurally, New Mexico law differs from federal law in allocating to the jury the

question of whether a given exercise of deadly force was reasonable, and that this

difference may be outcome determinative.[9]

---

[9]

> [A] judge is less likely than a jury to render a normative judgment that reflects the shared community sense on an issue; and it is this community sense that normative standards seek to incorporate into the process.  Magistrates and judges are not typical members of the community.  They differ significantly from the general population in education,  intelligence, economic status, and political views.  Further, their judgments are likely to be distorted by the experience of becoming a lawyer and judge;  common sense may be the first casualty of legal training.

 Paul H. Robinson, *Legality and Discretion in the Distribution of Criminal Sanctions*, 25 Harv. J. on Legis. 393, 416-17 (Summer 1988).

> "A primary rationale for sending [tort] cases to the jury is that reasonableness is a judgment call—and one that juries are particularly well qualified to make, because of the range of jurors' life experiences" *Catherine T. Struve, Constitutional Decision Rules for Juries*,  37 Colum. Hum. Rts. L. Rev. 659, 704-05 (Spring 2006).

> The nation's legal system is grounded in the notion that, after the elites and the professionals have resolved the legal issues, a case should be laid before a group of common people to make the final factual findings. This practice furthers the perception of  justice that our society has of the judicial system.  In a case, like this one, where a violent act took a man's life and the perpetrator's liability hinges on a close factual determination, society is not well served if an unelected judge makes the final determination behind closed doors. Having a single judge resolve such a factual question that is best answered by a jury undermines the appearance of justice. . . . Especially in Albuquerque and the nation at large, where police shootings are heated topics of debate, courts should be reluctant to resolve factual issues. . . .

In short, the Court's determination of the reasonableness of Officer Eichel's use of force in its discussion of qualified immunity does not preclude a reasonable jury, applying New Mexico's dual objective-subjective tort standard, from finding that Officer Eichel acted  unlawfully in shooting Alfred.

**WHEREFORE, IT HEREBY IS ORDERED** that Officer James Eichel's *Motion for Summary Judgment* [Doc. 12] is **granted** as to **Counts I and III** and **denied** as to **Count IV**.

**So ordered this 30th day of September, 2015.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge

---

*Dorato v. Smith*, __F. Supp. 3d __, 2015 WL 3540363 *68 (D. N.M.) (Browning, D.J.).